**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA :**
**:**
**v. : CR No. 04-061S**
**:**
**JOSE N. CASTRO :**

**UNITED STATES' PRELIMINARY RESPONSE TO REMAND ORDER**

**1. Introduction**

On June 6, 2008, the First Circuit remanded this case for a determination concerning whether Castro deposited a notice of appeal in the prison mailbox on January 22, 2005, one day after his original sentencing, in compliance with the mailbox rule in Fed. R. App. P. 4(c)(1). According to Castro, he mailed a pro se notice of appeal to this Court on that date, using the mailbox at the ACI jail where he was then incarcerated, only to discover three years later that the letter was "returned to sender" because the district court address was partially obscured. For reasons discussed below, and in light of evidence the government intends to introduce at the scheduled July 17, 2008 hearing, the Court should reject Castro's story.

**2. Some Key Problems with the Story**

The government makes six main points as a preliminary matter. It will supplement these points with further evidence at the July 17 hearing.

First, in an earlier § 2255 petition filed 19 months after his sentencing, Castro claimed for the first time that his trial attorney was ineffective in failing to file a notice of appeal on his behalf. (Civ. No. 06-393, Docket No. 1.) As this Court noted at the time, Castro did not allege that "he gave his counsel specific instructions to file an appeal on his behalf" or even that there were "facts that would indicate that he reasonably demonstrated to counsel that he was interested in appealing." (Civ. No. 06-393, Docket No. 9, at 5, 7.) It was not until after this Court denied the petition that Castro alleged for the first time that he had explicitly instructed his attorney to appeal. (Civ. No. 06-393, Docket No. 11, at 3 & Exhibit B.) Moreover, even in his motion for reconsideration of the § 2255 ruling, Castro never claimed that he wrote an actual letter to his attorney with such instructions, and he never produced a copy of such a letter. (Ibid.) Instead, he merely alluded to a possible oral discussion while citing factors that he said should have alerted counsel to his desire to appeal even if he "failed to specify his wish to file a direct appeal." (Ibid. at 3-5.) This Court noted the belated nature of these assertions in denying the motion. (Civ. No. 06-393, Docket No. 13.) Castro then waited until late January 2008 to make his more detailed claim that, in fact, he wrote counsel a letter the day after his sentencing instructing him to appeal. (Crim. No. 04-61, Docket No. 45, "Certificate of Remailing.") And

it was only at that time, three years after his sentencing and months after the denial of his § 2255 petition, that Castro produced a copy of the alleged letter. (Crim. No. 04-61, Docket No. 45, attachment.) This sequence of events suggests a recurring theme: Castro conveniently discovers evidence when it suits him or when he has a need for it.

Second, consistent with this theme, although Castro now claims that he himself mailed a notice of appeal to this Court the day after sentencing (Crim. No. 04-61, Docket No. 45; "Answer to Show Cause" filed in First Circuit Case No. 08-1185), he never once mentioned this fact in any of his § 2255 filings even while he criticized his attorney for not filing a notice of appeal on his behalf. This is a striking omission for several reasons, not the least of which is that if Castro himself filed a notice of appeal that would have rendered moot the question whether his attorney should have filed one on his behalf. Instead of pursuing an elaborate ineffective assistance theory in a § 2255 proceeding 19 months after sentencing, as he did, Castro could have short-circuited the process by simply pointing to his own notice of appeal. This path would have led in a much more linear fashion toward the result that Castro then wanted: restoration of his direct appeal rights. Castro had every incentive to raise this issue earlier, but did not do so until his ineffective assistance claim ran aground, which strongly suggests that his I-filed-my-own-

appeal theory is a post hoc creation intended to open a new door after the first has been shut.

Third, and perhaps most significantly, a full three years elapsed between the date that Castro said he mailed his notice of appeal and the date on which he attempted to "re-file" it with this Court. (Crim. No. 04-61, Docket No. 45.) At no point during this three-year period did Castro make any inquiry of this Court or the Court of Appeals concerning the status of his appeal. If Castro had truly mailed his own notice of appeal to this Court, he naturally would have checked with this Court or the First Circuit within a few months of that event (at the very least) to determine where matters stood. There is simply no logical explanation for why he waited three years.

Fourth, apparently aware that he must account for the three-year gap and his failure to pursue the matter earlier, Castro has now discovered a further convenient fact: according to him, it took a full three years for his original letter to this Court to be "returned to sender," and it was only then that he realized that the direct appeal that he himself attempted to initiate was never perfected. (Crim. No. 04-61, Docket No. 45; "Answer to Show Cause" filed in First Circuit Case No. 08-1185.) And it was at this point, the story goes, that Castro "re-mailed" the notice of appeal to this Court along with a copy of the alleged letter that he sent to his attorney. (Ibid.) Apart from the fact that this account is

farfetched on its face and that it fails to explain why Castro made no earlier inquiry during the three-year period, the government intends to call at least one witness whose testimony will further undermine the claim.

Fifth, there is already record evidence which suggests that Castro is willing to re-write history when necessary to bolster his legal position. In his motion for reconsideration of the denial of his § 2255 petition, Castro claimed that his attorney had crossed through a sentence in the plea agreement concerning the waiver of his direct appeal rights, and he attached a page from the agreement which he said documented this fact. (Civ. No. 06-393, Docket No. 11, at 4 & Exhibit C.) As the government pointed out in responding to that motion (Civ. No. 06-393, Docket No. 12, at 4), and as this Court noted in denying the motion (Civ. No. 06-393, Docket No. 13, at 2-3), the handwritten amendments to the original plea agreement struck out clauses pertaining to waiver of the right to file a § 2255 petition; the direct appeal waiver clauses were left intact. (Crim. No. 04-61, Docket No. 23, at 6.) A comparison of the real plea agreement page with the one proffered by Castro reveals substantial differences between the two.

Sixth, in connection with the original sentencing, Castro's trial counsel acknowledged that he and Castro had reviewed the PSR and he conceded that Castro was a Career Offender facing a guideline sentencing range of 262-327 months; counsel merely asked

the court to deviate downward. (Sen. Tr. 3, 5, 21-28, 31; PSR ¶¶ 23, 54; PSR Addendum.) This Court granted the request and imposed a 200-month sentence –- representing a five-year departure or deviation -- over the government's objection. (Sen. Tr. 31-39.) There was little incentive to appeal in light of that victory. This fact further undermines the claim that, only one day later, Castro himself mailed a notice of appeal to this Court.

**3. The Law**

Because the ACI Intake Service Center where Castro was confined provides a conventional mailbox for inmates to post all their mail, including legal filings, and does not have a special "system designed for legal mail" within the meaning of Fed. R. App. P. 4(c)(1), Castro was required to file either a declaration or notarized statement which met the requirements of Fed. R. App. P. 4(c)(1). See Ingram v. Jones, 507 F.3d 640, 644-46 (7th Cir. 2007); United States v. Ceballos-Martinez, 387 F.3d 1140, 1143-46 (10th Cir. 2004); United States v. Craig, 368 F.3d 738, 740 (7th Cir. 2004); cf. Price v. Philpot, 420 F.3d 1158, 1166, n.7 (10th Cir. 2005) (noting that inmates may have to make such certifications even when they use a legal mail system).

Assuming arguendo that the notarized statement that Castro appended to his "re-filed" notice of appeal filed in this Court (Crim. No. 04-61, Docket No. 45), and to his "Answer to Show Cause" filed in the First Circuit, satisfies these requirements as a

matter of form, even though it was submitted well after the fact, the assertions therein must still be "true" in order for the mailbox rule to apply. See Ingram, 507 F.3d at 645.

In essence, the remand order asks this Court to determine whether Castro's allegations here are in fact true; if they are not, the mailbox rule does not apply and his direct appeal cannot go forward. While the six factors noted above would suffice in themselves to warrant an adverse finding against Castro, the government intends to submit additional evidence at the scheduled July 17 hearing.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Donald C. Lockhart
DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
donald.lockhart2@usdoj.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this, the 11th day of June, 2008, I mailed a true copy of this filing to:

Jose N. Castro, Pro Se
Reg. # 05467-070
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837-0000

/s/ Donald C. Lockhart
DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
donald.lockhart2@usdoj.gov